# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CHRISTINA FABEC, | Case No. 1:18 CV 1537 |
| Plaintiff(s), | JUDGE DONALD C. NUGENT |
| v. | MEMORANDUM OPINION AND ORDER |
| DEBT MANAGEMENT PARTNERS, LLC, et al., | |
| Defendant. | |

This matter comes before the Court on the Joint Motion of Defendants Debt Management Partners, LLC ("DMP") and Capital Management Holdings, LLC ("CMH") to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (ECF #8). For the reasons discussed below, Defendants' Motion to Dismiss is denied.

## Procedural and Factual Background

Plaintiff Christina Fabec filed a class action complaint against Defendants DMP and CMH, on behalf of herself and a purported nationwide class of similarly situated consumers, asserting claims for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*, (the "FDCPA"); the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, ("TPCA"), Ohio's Consumer Sales Practices Act, R.C. § 1345, *et seq.* ("CSPA") and state law claims of Invasion of Privacy and Civil Conspiracy. Defendants removed the action to this Court on July 6, 2018. Plaintiff's Complaint contains the following averments relevant to Plaintiff's the citizenship of the parties and Plaintiff's federal claims under the TCPA and the FDCPA:

3. Whereas the events and circumstances leading up to and asserted in this Complaint arose in Cuyahoga County, this Court is the proper venue under Civ. R. 3(B)(3).

4. As Defendants transact business in Ohio and/or caused tortuous injury to Plaintiff in Ohio, Defendants are subject to this Court's personal jurisdiction.

6. Ms. Fabec is, and was at all relevant times herein, a resident of Cuyahoga County, Ohio.

9. On information and belief, DMP is a New York corporate entity.

10. DMP is in the business of purchasing charged off debt and collecting the same through various agents, including [CMH].

11. DMP's principal business and purpose is the collection of debts.

12. On information and belief, the debts which DMP generally purchases and then collects are subprime or high interest consumer debts, such as payday loans.

13. As such, DMP knowingly retains collection agents that use oppressive techniques to obtain payment from the economically-disadvantaged consumers of these loans, who have no or limited means of repayment.

14. DMP is a debt collector under either or both definitions of that term as defined in 15 U.S.C. § 1692a(6), namely "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts."

16. On information and belief, [CMH] is a New York corporate entity.

17. [CMH] is in the business of collecting default consumer debts.

18. [CMH] is an agent of DMP.

19. [CMH] is a debt collector under either or both definitions of that term as defined in 15 U.S.C. § 1692a(6); "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or

who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

21. In connection with their unlawful activities described herein, Defendants operate in concert with one another for a common purpose.

22. On information and belief, via the terms of their agreement, DMP has a right to control the manner and means of collection and activities engaged in by [CMH], and DMP exercises that control by monitoring the conduct of [CMH] and withdrawing accounts when a complaint is made by a consumer.

23. As such, given the nature of the relationship between the parties and nature of the debts being collected, DMP, if it did not engage in the conduct at issue itself, knew of or should have known of, approved of, and authorized or acquiesced to, the calls and the aggressive collection techniques and threats being used by [CMH] (and/or [CMH]'s subagents)...

25. Within the past year, Ms. Fabec reeived calls on her cell telephone from [CMH] and/or its agents demanding money in connection with an allegedly outstanding debt.

26. [CMH] initiated these calls using an automatic telephone dialing system and/or by employing the use of an electronic or prerecorded voice.

28. Ms. Fabec never authorized [CMH] to call her on her cell phone.

29. Furthermore, Ms. Fabec requested the calls to cease.

30. Nonetheless, [CMH] continued to call and made at least thirty unauthorized calls to Ms. Fabec's cell phone.

31. [CMH] demanded sums in connection to an alleged payday loan though [sic] CashnetUSA.

32. [CMH] demanded sums to which neither it nor DMP was not entitled by law and/or contract.

33. [CMH] threatened to find Mr. [sic] Fabec as her job.

3

> 34. [CMH] made this threatened ... contact at Ms. Fabec's place of employment and to contact her employer for the purpose of embarrassing and engendering fear in her.
>
> 35. [CMH] used derogatory and disrespectful language and tone while speaking with Mr. Fabec and called her "stupid."
>
> 37. When Ms. Fabec asked [CMH]'s agent for the name of the company calling, the agent responded "Global" and would give no further information.
>
> 38. [CMH] did not properly identify itself or DMP.
>
> 41. [CMH] made its threats, misrepresentations, and harassing and offensive statements for the purpose of extorting payment from Ms. Fabec.
>
> 42. [CMH] made similar calls to Ms. Fabec's husband, father, brother, and brother in law, leaving or conveying similar messages and threats.

(ECF #1-1)

In response to Plaintiff's Complaint, Defendants filed the instant Joint Motion to Dismiss on August 6, 2018. The Motion is supported by the Declaration of Daniel Valentine, an officer of Defendant DMP (ECF #8-2) and the Affidavit of Mr. Daniel D'Elia, the President of CMH. The Declaration of Daniel Valentine provides in relevant part:

> 1. I am an officer of defendant DMP and am a 50% shareholder of DMP's sole member, a New York corporation.
>
> 2. DMP is a Delaware limited liability company with its offices and principal place of business in the Town of Amherst, Erie County, New York.
>
> 3. DMP is in the business of buying and selling non-performing accounts receivable....
>
> 4. DMP typically purchases charged off accounts for a few cents on the dollar in relation to the face value of the debts. DMP then most

often resells portfolios of accounts at a negotiated purchase price to other companies that, in turn, resell or try to collect on them.

5. Although not its primary purpose, DMP does also, from time to time, place accounts with third party companies for collection. Those placements are made pursuant to arms-length contracts, and the collection companies are independent contractors, not agents of DMP. In the case of placements, DMP retains sole ownership of the accounts.

6. However, DMP does not engage in any debt collection activity itself. DMP does not contact individual account debtors in writing or by telephone and rarely makes any outgoing calls. The only circumstances under which DMP would call an account debtor are when the debtor contacts DMP and requests a return call.

7. While DMP may buy and sell debt portfolios, including the accounts of Ohio debtors (along with those of many other states), it is not involved in the underlying loans. DMP buys and sells debt through transactions with companies in New York and in several other states. However, DMP does not engage in any substantial, continuous or systematic business contact with companies or individuals in Ohio.

8. DMP does not have any office, employees, agents or representatives (other than the attorneys hired to defend this lawsuit) in Ohio. DMP does not send employees to Ohio to conduct business.

9. DMP conducts all its business from its single office in New York. It does not have an Ohio mailing address or telephone number.

10. DMP does not own or lease any real property in Ohio and hold no leases or mortgages on real property in Ohio.

11. DMP has not been authorized to do business in Ohio since August 2015. DMP does not have an authorized agent for service of process in Ohio.

12. DMP has no bank accounts, books or records in Ohio.

13. DMP does not file any tax returns in the State of Ohio. From June 30, 2017 through July 1, 2018, shortly after I understand plaintiff filed her complaint, DMP earned no revenue at all in or from Ohio.

14. DMP sends no products or services to the State of Ohio.

15. DMP does not advertise in Ohio.

16. DMP has not sought the protection or privileges of the laws of the State of Ohio.

17. DMP never anticipated being subject to a lawsuit in Ohio.

18. No agent or representative of DMP has performed any actions that would lead DMP to believe that it could be hailed into an Ohio court.

19. The debt at issue in this lawsuit was acquired by DMP from a Texas company on or about March 15, 2018. Plaintiff's delinquent account was one of 37,083 accounts acquired in that transaction.

20. DMP only held the Fabec account for approximately twenty-five days, and never placed the Fabec account for collection during that time.

21. In fact, DMP never contacted plaintiff at any time, either by telephone or in writing.

22. On or about April 9, 2018, DMP transferred all of its right, title and interest in plaintiff's account, as part of a debt portfolio, to co-defendant [CMH]....

23. Transfer of the rights to plaintiff's account was an arms-length transaction. CMH is neither a subsidiary nor an affiliate of DMP, and there is no common ownership between the two companies. Once CMH acquired plaintiff's account from DMP, CMH had sole discretion regarding whether and/or how to collect on it. CMH is not, and never has been DMP's agent.

24. DMP never contacted plaintiff at any time, either directly or through any agent of (sic) representative. Upon information and belief, the only contact DMP had with anyone regarding this lawsuit were calls placed to DMP by plaintiff's attorney.

(ECF #8-2)

The Affidavit of Daniel D'Elia, President of CMH provides in relevant part:

2. CMH is a New York limited liability company with its principal place of business in Staten Island, New York. ... CMH does not maintain any presence in the State of Ohio and conducts no business in Ohio.

3. CMH buys and sells rights to portfolios of delinquent, charged-off accounts receivable. CMH does not, itself, collect debts.

4. CMH may periodically purchase or sell rights to portfolios of debt that include debts originating in Ohio as well as any other state. However, CMH is not involved in the underlying transactions creating the debts and does not regularly transact business in Ohio or any state other than New York.

5. CMH does not have any office, employees, agents or representatives (other than the attorneys hired to defend this lawsuit) in Ohio.

6. CMH has no bank accounts, records or books in Ohio.

7. CMH does not file any tax returns in the State of Ohio and earns no taxable revenue from the State of Ohio.

8. CMH sends no product or services to the State of Ohio.

9. CMH does not send employees to Ohio to conduct business. CMH conducts all its business from its single office in New York.

10. CMH does not advertise in Ohio, nor does it have an Ohio mailing address or telephone number.

11. CMH has not sought the protection or privileges of the laws of the State of Ohio.

12. CMH never anticipated being subject to a lawsuit in Ohio because it has never done business in Ohio.

13. No agent or representative of CMH has performed any actions that would lead CMH to believe that it could be hailed into an Ohio court.

14. CMH does not have an authorized agent for service of process in Ohio.

15. CMH does not own or lease any real property in Ohio and holds no leases or mortgages on real property in Ohio.

16. CMH is a small company located in Staten Island, New York, and would be substantially burdened by having to defend itself against this action in Ohio....

17. CMH acquired rights in 3715 accounts from [DMP] on April 9, 2018. Plaintiff's account was apparently among those debts.

18. The transaction with DMP was arms-length and took place entirely within the State of New York. CMH is not, and never has been, an agent of DMP.

19. CMH has never had any contact or communication whatsoever with Plaintiff except that I was called by Plaintiff's attorney after this lawsuit was filed.

(ECF #8-3)

Based upon these facts Defendants assert that this Court does not have personal jurisdiction over Defendants because Defendants are not subject to general or specific personal jurisdiction in Ohio. Plaintiff has filed an opposition to Defendants' Joint Motion to Dismiss arguing that the Defendants are subject to specific personal jurisdiction in Ohio and submits the Affidavit of Michael Fine, one of Plaintiff's attorneys, in support of Plaintiff's position.[1] Mr. Fine's Affidavit provides in relevant part:

---

[1] Plaintiff does not argue that the Defendants are subject to general personal jurisdiction in Ohio. The Court concurs that this Court does not general personal jurisdiction over Defendants in this case. *See Daimler AG v. Bauman*, 571 U.S. 117 (2014).

5. Prior to initiating this lawsuit, I spent significant time investigating the matter.

6. Because callers to Ms. Fabec refused to properly identify themselves or to provide anything in writing to her, I attempted to trace the ownership of the debt at issue via its chain of title.

7. I began by contacting CashnetUSA, the presumed original creditor.

8. CashnetUSA informed me that they sold the debt to National Credit Adjusters ("NCA").

9. NCA informed me that they sold the debt to Noram.

10. Noram informed me that they sold the debt to Defendant [DMP].

11. When I contacted DMP I was eventual (sic) directed to speak with DMP's "Chief Compliance Officer."

13. In a subsequent call, DMP acknowledged that it owned the debt.

14. DMP further told me that it had recalled the debt from its collector as a result of my informing DMP that Ms. Fabec had complaints against the collector.

15. DMP informed me that DMP had placed the debt with [CMH] for collection.

16. Subsequent to filing the lawsuit, I received a call from "Daniel Delia," who claimed to be a manager of [CMH.]

17. Mr. Delia acknowledged the (sic) had owned the debt, but he claimed that [CMH] had sold the debt to a company called "Global."

18. Mr. Delia claimed to know details about the number of calls between Ms. Fabec and "Global," and he claimed to know the methods used by "Global" to make its calls.

19 & 20. Mr. Delia said that he wanted to negotiate a resolution for "Global" but would not provide further information about "Global."

25. Thereafter, Mr. Frederick and I received a call from Counsel for DMP.

9

> 26. We returned the phone call and during the ensuing conference call, Counsel for DMP asserted that DMP sold the debt and was not involved in the calls to Ms. Fabec.
>
> 27. In response, I told Counsel for DMP that this information contradicted what DMP had told me when I had spoken with its Chief Compliance Officer.

(ECF #10-1)

Defendants filed a Joint Reply Brief in support of their Motion to Dismiss supported by the Declaration of David E. Gutowski, counsel for DMP in this action. Mr. Gutowski states that upon information and belief, that Plaintiff's counsel Mr. Fine, initiated at least six telephone calls with DMP, without the knowledge of DMP's counsel, from November 1, 2017 to date and that Mr. Fine knew or should have known that DMP was represented by his firm because he transmitted a copy of the summons and complaint upon DMP by sending it to his firm in Buffalo New York via overnight courier on or about July 6, 2018. Mr. Gutowski's firm is listed on the New York Secretary of State's website as the address to which that office will forward process served upon it. (ECF #14-1, ¶¶ 4-5). Mr. Gutowski also states that Mr. Fine's affidavit refers to inadmissible settlement discussions. (Id. at ¶6)

Thereafter, Plaintiff filed a Motion to Supplement Plaintiff's brief in Opposition with a citation to a 2017 case from the Northern District of Alabama. Defendant DMP moved to strike Plaintiff's Supplement, or in the alternative, to file a response to the Supplement. The Court granted Defendant's Motion to Strike in part, granting Defendant's request to file a response to Plaintiff's Supplement. Defendant DMP filed a Surreply in further support of its motion to dismiss on September 21, 2018. The Joint Motion to Dismiss is now fully briefed.

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a case for lack of personal jurisdiction. Once the defendant makes such a motion, the plaintiff bears the burden of proof that the Court does indeed have personal jurisdiction over the defendant. *Air Prods. and Controls, Inc. v. Safetech Intern., Inc.,* 503 F.3d 544, 549 (6th Cir. 2007). If the court relies solely on written submissions to resolve a Rule 12(b)(2) motion, the plaintiff's burden is "relatively slight"—the plaintiff need only make a prima facie showing of personal jurisdiction in order to quash defendant's motion. *Theunissen v. Matthews d/b/a Matthews Lumber Transfer,* 935 F.2d 1454, 1458 (6th Cir. 1991). The trial court must view the pleadings and affidavits in the "light most favorable" to the non-moving party, but the "defendant's undisputed factual assertions may be considered." *Air Prods.,* 503 F.3d at 549.

Finally, under Ohio law, "personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov,* 667 F.3d 705, 711 (6th Cir. 2012). The critical constitutional due process inquiry is whether the defendant has sufficient "minimum contacts" with the forum state so that the district court's exercise of jurisdiction over it comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Depending on the type of minimum contacts in a case, personal jurisdiction can either be general or specific. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1263 (6th Cir. 1996); *Reynolds v. Intern. Amateur Athletic Ass'n,* 23 F.3d 1110, 1116 (6th Cir. 1994). General jurisdiction exists where a defendant's "continuous and systematic" contacts with a forum render the defendant amenable to suit in any lawsuit brought against it in the forum. *See*

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Bristol-Myers Squibb Co. v Superior Court of California,* 137 S.Ct. 1773, 1780 (2017) *citing Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 918 (2011). The "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business, but in exceptional cases, a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *BNSF Ry. Co. v. Tyrrell,* 137 S.Ct. 1549, 1552-1553 (2017) *citing Daimler,* 134 S.Ct. at 761, n. 19.

Specific jurisdiction exists if the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum. *See Nationwide Mut. Ins. Co.,* 91 F.3d at 793. In this case, only specific jurisdiction is applicable. The Sixth Circuit has consistently applied the following criteria to determine whether specific jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe, Inc. v. Patterson,* 89 F.3d 1257.

## LAW AND ARGUMENT

This Court can establish personal jurisdiction over Defendants if: 1) Ohio's long-arm statute, O.R.C. § 2307.382, permits jurisdiction; and 2) exercising jurisdiction does not deprive

12

DMP or CMH of their due process rights under the Fourteenth Amendment. *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 183-184 (Ohio Sup. Ct. 1994). The Court will consider both elements of personal jurisdiction in turn.

### A. Ohio's Long Arm Statute Confers Personal Jurisdiction Over Defendants.

Plaintiff argues that Ohio's long-arm statute, O.R.C. § 2307.382, permits this Court to exercise personal jurisdiction over Defendants because Plaintiff has articulated claims for tortious conduct in violation of Ohio's CSPA, the FDCPA and the TCPA. As such, Plaintiff argues that this Court has personal jurisdiction over the Defendants because she alleges that they acted directly or by an agent to cause tortious injury in this state. The Ohio long-arm statute, R.C. § 2307.382, provides in relevant part, that:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> \*\*\*
>
> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> \*\*\*
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.
> \*\*\*

13

> (C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from act enumerated in this section may be asserted against him.

Courts have held that claims of violation of the FDCPA, the CPSA and the TCPA are founded in tort and give rise to tortious injury. *See e.g. Wise v. Zwicker & Associates, P.C.,* 780 F.3d 710, 715 (6th Cir. 2015) (FDCPA claim sounds in tort); *Guest v. Provident Fundings Assoc.,* 2013 WL 1003524 (S.D. Ohio 2013) (same); *Davis v. Dyers Volvo,* 2012 WL 591757, (4th Dist. 2012) (CSPA claim is a tort); *Betor v. Quantalytics, Inc.,* No. 465693, 2003 WL 22407121 (Cuy. Cty Common Pleas, Oct. 3, 2003) (TCPA claim is a tort); *Pricom Asphalt Sealcoating, Inc. v. Furnas,* No. 2008-G-2854, 2009 WL 1655031 (Ct. App. 11th Dist. June 12, 2009)("Violations of the TCPA constitute congressionally created torts...When committed by a tortfeasor operating from a foreign jurisdiction, personal jurisdiction in the Ohio courts is appropriate under R.C. 2307.382(A)(4) or (6).").

Review of the facts and law with respect to each Defendant leads to the conclusion that both CMH and DMP are subject to personal jurisdiction under R.C. 2307.382 (A)(3) and (6). First, with respect to CMH, Plaintiff alleges that CMH or its agent or subagent made at least 30 threatening and harassing phone calls to Ms. Fabec and members of her family, along with other conduct which allegedly violates the FDCPA, TCPA or the Ohio CSPA. Plaintiff's lawyer, Mr. Fine asserts in his declaration that he was told by DMP that DMP had placed Plaintiff's debt with CMH for collection. Mr. Fine further states that he was told by Mr. Delia of CMH that CMH had owned Plaintiff's debt but sold it to "Global." Nevertheless, Mr. Delia claimed to know details of the calls made by Global to Plaintiff and wanted to negotiate a resolution for Global. These alleged facts, which for the purposes of

this motion the Court must accept as true, state that either CMH acted as the debt collector assigned to Plaintiff's account for DMP or after CMH purchased Plaintiff's account, engaged Global to collect the debt and was aware of the methods and actions of Global with respect to its interactions with Ms. Fabec. By allegedly taking these actions themselves, or through an agent, in violation of the FDCPA, TCPA and the Ohio CSPA, defendants should reasonably have expected that the Ohio recipient of the phone calls related to an Ohio account holder would have been injured in Ohio. Accordingly, these allegations are sufficient to satisfy either (A)(3) or A(6) of the Ohio long- arm statute.

In opposition, Mr. D'Elia states in his affidavit that CMH has never had any contact or communication with Plaintiff and denied that CMH was an agent of DMP, although he admits that CMH acquired the rights to Plaintiff's delinquent account on April 9, 2018. Mr. D'Elia makes no mention of Global or Mr. Fine's assertion that DMP engaged CMH to collect the debt at issue. Even if the Court assumes that CMH denies the allegations in Mr. Fine's declaration, a defendant cannot "defeat jurisdiction merely by filing an affidavit contradicting jurisdictional facts alleged by the plaintiff." *Vlach v. Yaple*, 670 F.Supp.2d 644, 647 (N.D. Ohio 2009)(citation omitted).

In respect to DMP, Plaintiff alleges that DMP caused tortious injury to her by engaging CMH and its subagents to collect Plaintiff's debt, knowing that these agents would make threatening phone calls to her and her family members. Plaintiff asserts that DMP buys old debt and retains agents to collect on its behalf. Plaintiff asserts that DMP has the right to control the manner and means of collection and activities engaged in by CMH and that DMP is liable for all conduct of CMH and/or its subagents pursuant to

15

respondeat superior or agency. Further, Plaintiff's attorney, Mr. Fine states in his affidavit that DMP told him that it owned the debt and had recalled the debt from its collector as a result of Mr. Fine's informing DMP that Ms. Fabec had complaints against the collector. Mr. Fine alleges that DMP informed him that DMP had placed the debt with CMH for collection.

In his declaration Mr. Valentine of DMP, states that DMP has no contact with Ohio other than the fact that it once owned the debt at issue here and may buy and sell debt portfolios which include accounts of Ohio debtors. Mr. Valentine acknowledged that although, collection is not DMP's primary purpose, it does, from time to time, place accounts with third party companies for collection. He asserts that the collection companies are independent contractors, not agents, of DMP. With respect to the Plaintiff's debt, Mr. Valentine states that it was part of a portfolio of 37,083 accounts acquired in a transaction with a Texas company on March 15, 2018. DMP held Plaintiff's account for 25 days before transferring it as part of a debt portfolio to CMH on April 9, 2018. Mr. Valentine asserts that CMH is not a subsidiary or affiliate of DMP and that there is no common ownership between the companies. Further, he asserts that CMH is not an agent of DMP. Mr. Valentine asserts that DMP never contacted plaintiff by telephone or in writing either directly, or indirectly through any agent or representative. However, as noted above, a defendant may not defeat jurisdiction simply by filing an affidavit contradicting jurisdictional facts alleged by Plaintiff. Accordingly, reviewing the facts in the light most favorable to the plaintiff, the Court finds that both DMP and CMH are amenable to service of process under the Ohio long-arm statute.

## B. Exercising Personal Jurisdiction Over Defendants Would Not Violate Defendants' Due Process Rights Under the Fourteenth Amendment.

In addition to determining whether Ohio's long-arm statute confers personal jurisdiction over DMP and CMH, this Court must also analyze whether exercising such jurisdiction over these Defendants would deprive them of the right to due process pursuant to the Fourteenth Amendment. *Conti v. Pneumatic Prod. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992). The analysis used to establish specific jurisdiction consists of three parts: "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Miller v. AXA Winterhur Ins. Co.*, 694 F.3d 675 (6th Cir. 2012) citing *Southern Machine Company v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Purposeful availment is the first prong of the *Southern Machine* specific jurisdiction test, and requires a showing that defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a substantial connection with the forum state," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (*quoting World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). Put more simply, purposeful availment is required so that a defendant is not haled into court in a forum in which his

contacts are the result of random, fortuitous, or attenuated events. *Burger King*, 471 U.S. at 475. The purposeful availment prong may be met in some cases using the "effects test" articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). Under the "effects test" a "nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state,' so long as the tort "(1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Louis Vuitton Malletier v. Mosseri*, 736 F. 3d 1339, 1356 (11th Cir. 2013). Although the "effects test" has been narrowed by the Sixth Circuit, the existence of intentional tortious conduct nonetheless "enhances" a party's other contacts with the forum state for purposes of a purposeful availment analysis. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552–53 (6th Cir. 2007).

Here, Plaintiff argues that Defendants have purposefully availed themselves of Ohio's jurisdiction because Defendants, either acting on their own behalf or through a retained agent, made multiple contacts with Plaintiff in Ohio to collect on a delinquent account in Ohio. Further, the numerous contacts, allegedly in violation of the FDCPA, TCPA and the Ohio CSPA, create the sort of substantial connection to Ohio for which DMP and CMH should reasonably anticipate being haled into court. Moreover, Defendants' contacts with Ohio, either directly or through an agent, were intentional, not random, fortuitous or accidental. While the number of Defendant's contacts with Ohio are relatively minimal, these contacts are intentional, caused Plaintiff's injury in Ohio and form the basis of Plaintiff's causes of action. As such, Defendants' contacts with Ohio

meet the purposeful availment prong of the *Southern Machine* specific personal jurisdiction test. See *Vandenberg & Sons Furniture, Inc. v. Katchen,* Case No. 1:12 CV 1021, 2013 WL 504168 at *4 (W.D. Mich. Feb. 12, 2013)(One fax sent into Michigan was "sufficient to trigger a federal cause of action under the TCPA" and constitutes purposeful availment.); *Vlach,* 670 F.Supp. 2d at 649 (three communications allegedly in violation of FDCPA and OCSPA constitute purposefule availment).

Demonstrating purposeful availment is not enough to establish personal jurisdiction; the cause of action in the instant case must arise from the Defendants' activities here. *Smucker Co. v. Weston Firm, P.C.,* Case No. 5:13 CV 448, 2013 WL 3713457 (N.D. Ohio July 15, 2013). Furthermore, the exercise of jurisdiction should be reasonable. *Id.* "Arise from" has been interpreted to mean "related to" or "connected with" the defendant's contacts with the forum state. *Youn v. Track, Inc.,* 324 F.3d 409, 410 (6th Cir. 2003). In this case, Defendants' alleged contacts with Ohio clearly give rise to Plaintiff's causes of action here, satisfying the second element of the *Southern Machine* test.

Finally, Defendants argue that the exercise of jurisdiction would be unreasonable because their contacts with Ohio are minimal and superficial and participating in litigation in this forum would constitute an unnecessary hardship. However, where the first two elements of the specific jurisdiction test are satisfied, the exercise of jurisdiction over the non-resident defendant is presumed to be reasonable. *Vlach,* 670 F.Supp.2d 644, 649 *citing Third Nat'l Bank v. WEDGE Group Inc.,* 882 F.2d 1087, 1092 (6th Cir. 1989). "Only in unusual circumstances is the third element left unsatisfied, and the burden is on

the defendant to show it." *Id.* (citation omitted.) Defendants have not shown that they would be unreasonably burdened by litigating in this forum where their conduct or the conduct of their agent triggered claims under the TCPA, FDCPA and Ohio common law.[2] Any burden imposed on Defendants is outweighed by the interest of both the Plaintiff and the State of Ohio in Plaintiff obtaining legal relief. Therefore, the third element of the *Southern Machine* test is satisfied.

## CONCLUSION

For the foregoing reasons, having determined that personal jurisdiction over Defendants is proper under the Ohio Long Arm Statute and comports with Federal Due Process, Defendants' Joint Motion to Dismiss for lack of personal jurisdiction (ECF #8) is denied.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: October 4, 2018

---

[2] Finding jurisdiction unreasonable in these circumstances, especially where the first two elements of *Southern Machine* specific jurisdiction have been met, would deprive Ohio residents of their right to bring an FDCPA or TCPA claim against an out of state defendant where the defendant's contacts with Ohio were otherwise minimal.