# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Christina Fabec,**<br>**On behalf of herself and all**<br>**Similarly-situated consumers,** | Case No. 1:18cv1537 |
| **Plaintiff,** | |
| -vs- | |
| | **JUDGE PAMELA A. BARKER** |
| **Debt Management Partners, LLC,**<br>**et al.,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendants.** | |

Currently pending are the following motions: (1) Joint Motion to Dismiss (Doc. No. 59) filed by Defendants Capital Management Holdings, LLC ("CMH") and Debt Management Partners, LLC. ("DMP"); (2) Motion for Sanctions (Doc. No. 60) filed by former counsel for Plaintiff Christina Fabec; and (3) Defendant CMH's Cross Motion to Strike and for Sanctions (Doc. No. 61.) Also pending are the following discovery-related motions and papers: (1) Plaintiff Christina Fabec's Motion for Discovery pursuant to Fed. R. Civ. P. 56(d) (Doc. No. 48); (2) Defendant Capital Management Holdings, LLC's Motion for Protective Order (Doc. No. 51); (3) the Motion to Compel Discovery for Sanctions Hearing filed by former counsel for Plaintiff Christina Fabec (Doc. No. 75); (4) Defendant Debt Management Partners, LLC's Motion to Strike Motion to Compel or for leave to file a Supplemental Position Paper Instanter (Doc. No. 76); and (5) the Position Papers filed by Defendants CMH and DMP (Doc. Nos. 73, 74.)

For the following reasons, Defendants' Joint Motion to Dismiss (Doc. No. 59) is GRANTED. The Motion for Sanctions filed by former counsel for Plaintiff Christina Fabec (Doc. No. 60) and the

Cross Motion to Strike and for Sanctions by Defendant CMH (Doc. No. 61) are DENIED. All remaining motions (Doc. Nos. 48, 51, 75, 76) are denied as moot.

I. **Relevant Background**

On June 5, 2018, Plaintiff Christina Fabec filed a class action complaint in the Cuyahoga County Court of Common Pleas against Defendants DMP and CMH, on behalf of herself and a purported nationwide class of similarly situated consumers, asserting claims for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*, (the "FDCPA"); the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.,* ("TPCA"), Ohio's Consumer Sales Practices Act, O. R.C. § 1345, *et seq*. ("CSPA") and state law claims of Invasion of Privacy and Civil Conspiracy. (Doc. No. 1-1.) Defendant DMP removed the action to this Court on July 6, 2018.[1] (Doc. No. 1.)

Plaintiff moved for class certification on March 5, 2019, which both Defendants opposed. (Doc. Nos. 30, 32, 33.) On May 29, 2019, then-assigned District Judge Donald Nugent denied the motion as follows:

> The Court has thoroughly and exhaustively reviewed Ms. Fabec's Motion for Class Certification, along with related briefing and exhibits. Based on the limited discovery that has been exchanged by the Parties, it is unclear whether class certification is appropriate relative to any of Ms. Fabec's statutory claims and, at this time, there are factual disputes which speak to the merits of Ms. Fabec's individual claims and the class certification issue which may only be properly addressed with the benefit of additional discovery. Accordingly, the Motion for Class Certification filed by Plaintiff, Christina Fabec, is hereby DENIED. The question of whether or not class certification is appropriate may be revisited by the Parties at a later date if warranted.

(Doc. No. 42.) Judge Nugent conducted a status conference the next day, during which he (1) instructed Defendant DMP to file a motion for summary judgment by June 28, 2019 regarding the

---

[1] The following month, Defendants CMH and DMP filed a Joint Motion to Dismiss for lack of personal jurisdiction. (Doc. No. 8.) Plaintiff filed a brief in opposition, to which Defendants replied. (Doc. No. 10, 14.) On October 4, 2018, Defendants' Motion was denied. (Doc. No. 21.)

issue of agency, and (2) held discovery between Plaintiff and DMP in abeyance. (Doc. No. 43.) The Court determined, however, that discovery should commence as between Plaintiff and Defendant CMH and set a discovery deadline of August 30, 2019. (*Id*.)

On June 28, 2019, Defendant DMP filed its Motion for Summary Judgment. (Doc. No. 45.) On July 9, 2019, Plaintiff filed a "Memorandum in Opposition to Motion for Summary Judgment and, Alternatively, Motion for Discovery Pursuant to Fed. R. Civ. P. 56(d)." (Doc. No. 48.) Therein, Plaintiff argued DMP is not entitled to judgment in its favor with respect to the issue of agency. Plaintiff also asserted that both Defendants had impeded discovery throughout the course of the instant action and requested the opportunity to "complete full discovery in this matter in accordance with the civil rules before judgment could be considered against her." (*Id*. at p. 14.) In particular, Plaintiff requested that the Court "lift its stay of discovery with respect to DMP to allow her to conduct discovery to properly supplement her opposition to the MSJ."[2] (*Id*.)

On July 5, 2019, this matter was re-assigned to the undersigned pursuant to General Order 2019-13.

Shortly thereafter, on July 19, 2019, Defendant CMH filed a Motion for Protective Order. (Doc. No. 51.) Therein, CMH sought to prevent Plaintiff from taking several depositions in New York, including the deposition of CMH President, Daniel D'Elia. (*Id.*) Plaintiff opposed the motion. (Doc. No. 52.)

On July 29, 2019, the Court issued an Order as follows:

Upon careful review, the Court finds additional discovery is warranted. Accordingly, Defendant DMP's Motion for Summary Judgment (Doc. No. 45) and Plaintiff's Motion to Strike Affidavits (Doc. Nos. 47) are denied without prejudice subject to

---

[2] Plaintiff also moved to strike several affidavits attached to DMP's summary judgment motion. (Doc. No. 47.)

3

> refiling after the close of discovery. The Court has further determined that mediation would be fruitful at this time and hereby refers this matter to Magistrate Judge Baughman to conduct a mediation conference within the next 30 days. All discovery is stayed pending mediation. If this matter does not settle, the Court will conduct a telephonic status conference with lead counsel shortly thereafter. Plaintiff's Motion for Discovery (Doc. No. 48) and Defendant Capital Management Holdings, LLC.'s Motion for Protective Order (Doc. No. 51) are held in abeyance at this time and will be revisited after mediation proceedings have concluded.

(Doc. No. 53.) A mediation conference was conducted on September 10, 2019. (Doc. Nos. 58.) The parties were not able to reach an agreement during the conference. (*Id*.)

On September 16, 2019, Defendants CMH and DMP filed a Joint Motion to Dismiss the instant action with prejudice. (Doc. No. 59.) Therein, Defendants assert that "following the court-ordered mediation in this case . . . , the parties themselves conferred directly and settled this case without counsel." (Doc. No. 59-1.)

Shortly thereafter, on September 20, 2019, counsel for Plaintiff filed a Motion for Sanctions. (Doc. No. 60.) Therein, counsel argued that "CMH has gone behind the back of Plaintiff's counsel and, surreptitiously, contacted Ms. Fabec." (*Id*.) Counsel maintained that CMH "induced Ms. Fabec to secretly accept a settlement offer without the advice of counsel" and has thereby "driven a wedge between Ms. Fabec and her counsel." (*Id*.) Counsel stated that, on September 13, 2019, Ms. Fabec's husband "called Plaintiff's counsel to inform them that their services were no longer needed." (*Id*. at p. 2.) Counsel asserted that CMH's "coercive conduct is an affront to the judicial process and warrants sanctions," including an Order (1) requiring CMH to pay Plaintiff's Counsel's attorneys' fees and costs; (2) compelling CMH to produce "overdue discovery" identifying class members; and (3) allowing amendment of the Complaint to substitute a new class representative. (*Id*. at pp. 9-10.)

Defendant CMH responded by filing a Brief in Opposition and Cross-Motion to Strike and for Sanctions. (Doc. No. 61.) CMH argues as follows:

4

> Ultimately, in frustration, one of CMH's principals, Mr. Dan D'Elia, contacted plaintiff's husband and offered to settle all plaintiff's claims against both defendants for the sum of $10,000. Mr. Fabec asked why Mr. D'Elia would offer so much money. Mr. D'Elia responded that Mrs. Fabec had rejected all defendants' previous offers, $6,000 in August, 2018 and a higher number in August, 2019, so Mr. D'Elia thought he would offer a little more. Mr. Fabec then asked what previous offers Mr. D' Elia was talking about because neither he nor his wife, the plaintiff, had ever heard about any offers having been made.
>
> Mr. D'Elia told Mr. Fabec the first offer to settle was made at the beginning of the lawsuit back in August 2018 and the amount was $6,000. By text message, Mr. Fabec told Mr. D'Elia that the Fabecs had never been told about that offer. By text message, Mr. Fabec informed Mr. D'Elia that the Fabecs would 'probably' have taken the $6,000 offer and settled then had they known about the offer. At one point, Mr. Fabec informed Mr. D'Elia by text message that Mr. Fabec had called one or another of the Fabec attorneys and asked whether any offers to settle had been made by defendants because he and his wife wanted the matter concluded and the attorney said, 'no.'
>
> Mr. Fabec also told Mr. D'Elia that Mr. Fabec had both of the Fabec attorneys on the telephone at the same time and told those attorneys . . . [that] the Fabecs were going to take Mr. D'Elia's offer and the services of Messrs. Fine and Frederick were no longer required.

(*Id*. at pp. 2-4) (citations omitted).³ At some point that day, Mr. D'Elia contacted CMH's attorney herein, Dean Hoover, and informed him that the parties had reached a settlement. (*Id*. at p. 4.) Mr. D'Elia asked Mr. Hoover for "a simple way to document the settlement." (*Id*.) Mr. Hoover provided Mr. D'Elia with a "form of endorsement" that Mr. D'Elia could handwrite on the back of the check given to Ms. Fabec, which included a release of "all claims I made or could have made in this lawsuit." (*Id*.) Subsequently, Mr. D'Elia forwarded to Mr. Hoover a copy of the check that had been negotiated by Ms. Fabec, "which was accepted and cashed in full satisfaction of all her claims against CMH and CMP." (*Id*.)

---

³ In support, CMH submitted an Affidavit from Mr. D'Elia, along with copies of alleged text messages between Mr. Fabec and Mr. D'Elia.

In its Opposition/Cross-Motion, CMH argues the Motion for Sanctions filed by former counsel for Ms. Fabec should be stricken because they were discharged by Ms. Fabec on September 13, 2019 and, therefore, had no authority to file the Motion on her behalf. (*Id*. at p. 5-7.) CMH further asserts that "the Motion is based on the false legal premise that CMH did something wrong when its principal decided to talk settlement with plaintiff's husband and/or that CMH's counsel did something wrong in providing 'legalistic language' for his client's use." (*Id*. at p. 8.) CMH maintains that it did nothing to undermine plaintiff's relationship with her former counsel, arguing "the attorneys did that to themselves when [they] . . . failed to inform the Fabecs of settlement offers made by defendants." (*Id*. at p. 12.) Lastly, CMH asks the Court to impose sanctions on Plaintiff's former counsel. CMH asserts that Plaintiff's former counsel, Messrs. Frederick and Michael Fine "prolonged this lawsuit by withholding settlement offers from their client," causing Defendants to incur unnecessary expenses "including but not limited to attorneys' fees, currently totaling in excess of $150,000."[4] (*Id*. at p. 15.)

On October 8, 2019, Messrs. Ronald Frederick and Michael Fine (hereinafter "Plaintiff's former counsel") filed a Reply in support of their Motion for Sanctions and Brief in Opposition to Defendants' counter Motions. (Doc. No. 63.) Therein, Plaintiff's former counsel vehemently dispute CMH's allegations that CMH made a formal settlement offer in August 2018 and/or that Plaintiff's former counsel failed to communicate written settlement offers to Mrs. Fabec. (*Id.*) Counsel also argues, at length, that "Mr. Hoover's involvement in procuring a settlement with a party represented by counsel without the involvement of counsel was unlawful." (*Id.*) Counsel asserts as follows:

---

[4] DMP also filed a brief in opposition to the Motion for Sanctions filed by Messrs. Frederick and Fine, in which it joined in the arguments raised by CMH. (Doc. No. 62.)

6

On September 10, 2019, the parties participated in a court-ordered mediation before Magistrate Judge Baughman. The matter did not settle. That evening, Capital Management Holdings, LLC ("CMH") secretly contacted Ms. Fabec directly. CMH apparently offered Ms. Fabec $10,000 to settle the matter. The caller apparently made disparaging remarks to Ms. Fabec and her husband about the undersigned, and the caller took it upon himself to advise Ms. Fabec and her husband that $10,000 far-exceeded any recovery she could receive in this litigation.

These representations induced Ms. Fabec to accept the offer. On information and belief, the caller instructed Ms. Fabec not to inform the undersigned of the settlement until she received the settlement funds. On information and belief, the caller further instructed Ms. Fabec not to disclose the identity of the caller or terms of settlement to her counsel. Rather, CMH instructed Ms. Fabec to simply inform the undersigned that their services were no longer needed.

Based on the exhibit to Defendants' Joint Motion to Dismiss, on September 11, 2019, CMH wrote a check for $10,000 to Ms. Fabec. CMH wrote a "settlement agreement" in legalistic language on the back of the check, indicating that Ms. Fabec's endorsement would completely resolve this lawsuit. CMH immediately sent the check to Ms. Fabec.

Based on the bank notation on the back of Defendants' exhibit, Ms. Fabec negotiated the check on September 13, 2019. That evening, Mr. Fabec called Plaintiff's counsel to inform them that their services were no longer needed. The undersigned attempted to discuss the matter with the Fabecs, but CMH had already caused irreparable damage to their relationship with her. The undersigned asked Mr. Fabec for some time to clear up the matter and to meet with the Fabecs. Mr. Fabec agreed.

Nonetheless, less than two hours after Mr. Fabec called to the undersigned, Dean Hoover, counsel for CMH, emailed Plaintiff's counsel, "You have rejected or ignored all previous offers of settlement and the offer of judgment made by defendants in this case. If any remain open, they are hereby rescinded. It is my information that the parties have settled this case between themselves on other terms and that your client has informed you of same." Shortly thereafter, Plaintiff's counsel received an email from David Gutowski, counsel for Debt Management Partners, LLC ("DMP").

(*Id*. at pp. 1-2.) Plaintiff's former counsel request an oral hearing on the pending sanctions motions and argue that "the Court should order production of all CMH's records related to communications with the Fabecs" and conduct an *in camera* review of Plaintiff's former counsel's confidential communications with the Fabecs. (*Id.*)

7

The Court set a hearing for November 15, 2019 regarding the parties' sanctions motions. Plaintiff's former counsel filed a motion to continue the hearing, which Defendants opposed. (Doc. Nos. 68, 70.) The Court then conducted a telephonic conference on November 6, 2019, during which it granted Plaintiff's former counsel's motion and rescheduled the hearing for January 28, 2020. (Doc. No. 72.) In addition, the Court ordered the parties to meet and confer to attempt to resolve various issues that were raised during the telephone conference regarding discovery that the parties wished to conduct prior to the hearing. In the event the parties were unable to resolve these discovery issues, the Court ordered the submission of position papers by no later than November 20, 2019. (*Id.*)

Defendants CMH and DMP submitted Position Papers on November 20, 2019. (Doc. Nos. 73, 74.) Despite being directed to file a Position Paper, Plaintiff's former counsel filed a Motion to Compel and Memorandum of Law Regarding Discovery for Sanctions Motion. (Doc. No. 75.) Defendant DMP promptly moved to strike Plaintiff's former counsel's Motion or, in the alternative, sought leave to file a Supplemental Position Paper instanter. (Doc. No. 76.) Plaintiff's former counsel filed a brief in opposition to DMP's Motion to Strike, to which DMP replied. (Doc. Nos. 78, 79.)

**II. Analysis**

**A. Joint Motion to Dismiss**

The Court first addresses Defendants' Joint Motion to Dismiss, as it implicates this Court's subject matter jurisdiction. *See Unan v. Lyon*, 853 F.3d 279, 285 (6th Cir. 2017) ("It is well established that a federal court must determine jurisdictional questions before proceeding to the merits.").

As noted above, on September 16, 2019, Defendants jointly moved to dismiss this action with prejudice on the grounds that "the parties themselves conferred directly and settled this case without

8

counsel." (Doc. No. 59.) In support of this Motion, Defendants attach a copy of a check dated September 11, 2019, made out to Plaintiff Christina Fabec from CMH in the amount of $10,000. The following language is hand-written on the back of the check:

> By endorsing and cashing this check, I Christina Fabec acknowledge and agree that (i) this check was tendered by Capital Management Holdings LLC in good faith and full satisfaction of all claims I made against Capital Management Holdings, LLC and/or Debt Management Partners, LLC, in the lawsuit captioned 'Fabec v. Debt Management Partners, LLC, et al.,' Case No. 1:18cv1537, pending in the Federal District Court for the Northern District of Ohio; (ii) The amounts of the claims were unliquidated and subject to bona fide disputes; and (iii) I accept this payment in full and final settlement of all claims I made or could have made in said lawsuit.

(Doc. No. 59-1 at PageID#723-724.) It is undisputed that Plaintiff Fabec endorsed and cashed the above check on September 13, 2019.

In response, Plaintiff's former counsel submitted a Motion for Sanctions on the grounds that Defendant CMH acted improperly in negotiating the settlement. (Doc. No. 60.) In addition to seeking sanctions, Plaintiff's former counsel assert (summarily and in a footnote) that "despite any settlement, this matter should not be dismissed." (*Id.* at fn 1.) They argue that "this Court should not penalize the remainder of the class who suffered from CMH's actions" and ask the Court to "compel CMH to produce a list of all putative class members and allow the amendment of the complaint to substitute a new class representative."[5] (*Id.* at p. 12.)

Defendant CMH argues in response that "the attorneys who filed the Motion [for Sanctions] admit they were discharged by Plaintiff on September 13, 2019" and, thus, "had no authority to file the Motion a week later supposedly on Plaintiff's behalf." (Doc. No. 61 at p. 5.) Defendant maintains

---

[5] Despite acknowledging in the Motion that Plaintiff terminated their representation and that no class has been certified, Messrs. Frederick and Fine purport to file the Motion as "attorney for Ms. Fabec and the Class." (Doc. No. 60 at p 13.) It is not clear whether Messers. Frederick and Fine served a copy of the Motion for Sanctions on Ms. Fabec.

"claims that are settled are settled, lawsuits without parties on each side of the docket should be dismissed, and the fees of plaintiff's former attorneys is a matter to be resolved between those attorneys and their client according to the terms of their legal services agreement."[6] (*Id*. at p. 7.)

For the following reasons, the Court finds that Plaintiff's voluntary settlement of the instant action and discharge of her attorneys has rendered the instant action moot. Article III of the United States Constitution "conditions the exercise of federal judicial power on the existence of a live, ongoing case or controversy." *Pettrey v. Enterprise Title Agency, Inc*., 584 F.3d 701, 703 (6th Cir. 2009). As the Sixth Circuit has explained, this is "'a cradle-to-grave requirement' that must be satisfied at the time a plaintiff first brings suit and that must remain satisfied throughout the life of the case." *Hrivnak v. NCO Portfolio Management, Inc.,* 719 F.3d 564, 567 (6th Cir. 2013) (quoting *Fialka–Feldman v. Oakland Univ. Bd. of Tr*., 639 F.3d 711, 713 (6th Cir. 2011)). "If a case in federal court loses its character as an actual, live controversy at any point during its pendency, it is said to be moot." *Pettrey*, 584 F.3d at 703. Once that occurs, "the case is no longer within the jurisdiction of the federal courts, and therefore must be dismissed." *Id.; see also Ahmed v. Univ. of Toledo*, 822 F.2d 26, 27 (6th Cir. 1987) ("It is fundamental that we may not decide moot issues."); *Wolschlager v. Law Officers of Mitchell D. Blumn & Assoc., LLC*, 366 F.Supp.3d 888, 891 (W.D. Mich. May 18, 2017).

Generally speaking, "settlement of a plaintiff's claims moots an action." *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993). The mootness doctrine, however, is "flexible" in the case of class actions. *Wilson v. Gordon*, 822 F.3d 934, 942 (6th Cir. 2016). *See also Unan*, 853 F.3d at

---

[6] Defendant DMP also filed a response in which it argued that "[s]ince [plaintiff's former counsel's law firm] no longer represents a party in the action, it is not authorized to oppose the motion to dismiss, which, in any event, was obviously supported by the plaintiff Christina Fabec herself." (Doc. No. 62 at p. 2.)

10

285. "In general, '[*o*]*nce a class is certified*, the mooting of the named plaintiff's claim does not moot the action, [and] the court continues to have jurisdiction to hear the merits of the action if a controversy between any class member and the defendant exists.'" *Unan*, 853 F.3d at 285 (quoting *Brunet*, 1 F.3d at 399) (emphasis in original). However, "the Sixth Circuit has repeatedly held that the mooting of a prospective named plaintiff's claim before filing for class certification moots the case." *Wolschlager*, 366 F.Supp.3d at 891 (citing *Brunet, supra; Gawrey v. Countrywide Home Loans, Inc.*, 395 Fed. Appx. 152 (6th Cir. 2010); *Pettrey; supra; Montgomery v. Kraft Foods Global*, 822 F.3d 304 (6th Cir. 2016)).

Here, it is undisputed both that Plaintiff voluntarily settled her individual claims and that she has discharged her attorneys, Messrs. Frederick and Fine. It is further undisputed that class certification was denied in May 2019.[7] (Doc. No. 42.) Thus, unless an exception to the mootness doctrine applies, Sixth Circuit law dictates a finding that Plaintiff's voluntary settlement of her claims rendered this action moot, such that this Court no longer has jurisdiction over this case. *See Gawry*, 395 Fed Appx. at 153; *Pettrey*, 584 F.3d at 703; *Montgomery*, 822 F.3d at 306; *Brunet,* 1 F.3d at 399.

Plaintiff's former counsel does not argue that a recognized exception to the mootness doctrine applies to the instant case.[8] Without acknowledging or discussing any of the above authority, Plaintiff's former counsel argues generally that "so long as a case has not been dismissed, the acceptance of a settlement offer by an existing lead plaintiff will not necessarily moot an action." (Doc. No. 60 at p. 10.) Citing unreported cases from New Mexico and New York, Plaintiff's former

---

[7] Although Judge Nugent left open the possibility that Plaintiff could revisit the issue of certification at a later date "if warranted," there is no motion for class certification currently pending before the Court.

[8] Indeed, neither party acknowledges or addresses any of the Sixth Circuit authority noted above.

11

counsel asserts that this Court "has the discretion to allow pleadings to be amended to substitute class representatives." (*Id*. at pp. 10-11.) Plaintiff's former counsel also appears to suggest that dismissal is not appropriate in light of Defendant's alleged misconduct in contacting and negotiating directly with Plaintiff.

The Court rejects these arguments. None of the cases cited by Plaintiff's former counsel address the applicability of the mootness doctrine in situations where the sole named plaintiff has not only voluntarily settled her claims but has discharged her attorneys and voiced no interest in representing the interests of putative class members.[9] Moreover, unlike several of the cases cited by Plaintiff's former counsel where substitution was permitted, there is no indication here that there are, in fact, any identifiable class representatives willing and able to serve as named plaintiffs in the instant action. *See e.g., Archuleta v. City of Santa Fe,* 2014 WL 12782788 (D. N. Mex. Dec. 22, 2014) (allowing amendment of complaint to substitute new class representatives where plaintiffs promptly sought leave to substitute two specific individuals as class representatives).

The Court also rejects Plaintiff's former counsel's suggestion that the "picking off" exception to the mootness doctrine applies here. The "picking off" exception was developed to prevent

---

[9] For example, in *Loatman v. Summit Bank*, 174 F.R.D. 592 (D.N.J. 1997) (upon which Plaintiff's former counsel heavily relies) the named plaintiff repeatedly rejected the defendant's improper settlement offers and did not terminate her counsel. Moreover, the court in that case did not consider the issue of mootness under Article III. Plaintiff's former counsel's reliance on *Hamilton v. Ohio Savings Bank*, 694 N.E.2d 442 (Ohio 1998) and *Russell v. Citigroup, Inc*., 748 F.3d 677 (6th Cir. 2014) is similarly misplaced because neither of these cases address the issue of mootness where a named plaintiff has voluntarily settled her individual claims and discharged her attorneys. While the court in *In re National Australia Bank Securities Litigation,* 2006 WL 3844463 (S.D. N.Y. 2006) did consider mootness in the class action context, that case is distinguishable because, there, the plaintiff had not yet had a reasonable opportunity to move for class certification. Here, however, Plaintiff moved for class certification and that motion was denied by Judge Nugent in May 2019. Likewise, *Schaake v. Risk Management Alternatives, Inc*., 203 F.R.D. 108 (S.D.N.Y. 2001) is not on point as it addressed a defendant's motion to compel the acceptance of a Rule 68 Offer of Judgment, which is an entirely different context than a voluntary negotiated settlement. Moreover, *Schaake* applied Second Circuit law, which is not binding on this Court. Most notably, none of the many cases cited by Plaintiff's former counsel involve named plaintiffs that discharged their attorneys.

defendants from strategically avoiding litigation by settling or buying off individual named plaintiffs in a way that "would be contrary to sound judicial administration." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). *See also Unan*, 853 F.3d at 285. The Sixth Circuit has applied this exception in several recent cases in instances where the defendant's behavior (with regard to the timing and method of obtaining settlements with named plaintiffs) demonstrated an intentional attempt to frustrate the objectives of class actions. *See Wilson v. Gordon*, 822 F.3d 934 (6th Cir. 2016); *Unan v. Lyon*, 853 F.3d 279 (6th Cir. 2017).

Here, the Court finds that Plaintiff's former counsel failed to sufficiently raise this issue in their Motion. Plaintiff's former counsel refers to the "picking off" exception summarily in one sentence and cites none of the many relevant United States Supreme Court or Sixth Circuit cases addressing this issue. (Doc. No. 60 at p. 11.) Nor does Plaintiff's former counsel make any attempt to meaningfully apply the law regarding the "picking off" exception to the facts of the instant case. Under these circumstances, the Court finds that Plaintiff's former counsel waived any argument regarding this issue. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293–94 (1st Cir.1995))). *See also Montgomery*, 822 F.3d at 312 (same).

Moreover, even assuming *arguendo* that counsel had sufficiently raised the "picking off" exception, the Court would find that it did not apply for the reasons set forth in *Pettrey, supra*:

> This case also does not raise concerns about a defendant defeating a class action by "picking off named plaintiffs." This concern is not implicated here since the settlement

> occurred after the motion for class certification was denied and interlocutory review was denied. Such a concern would arise when a defendant attempts to eliminate the named plaintiffs at the outset of the class action by conveying an offer of judgment or settlement with the named plaintiffs before or immediately after a class certification motion is filed, but this has plainly not happened here. In any event, though, even if picking off the named plaintiff were a concern, we are not at liberty to create a controversy where one no longer exists. *See Toms,* 179 F.3d at 106–07 ("Courts are not at liberty to perpetuate such controversies when, by virtue of settlement, they no longer exist.").

*Pettrey,* 584 F.3d at 707. Accordingly, even if considered properly raised, the Court finds Plaintiff's former counsel has not demonstrated that the "picking off" exception applies.

Accordingly, and for all the reasons set forth above, the Court finds there is no longer a live case or controversy and this case is moot. Under Sixth Circuit precedent, the Court is therefore "'required' to dismiss this action." *Gawry,* 395 Fed. Appx at 160 (citing *Brunet,* 1 F.3d at 399). Defendants' Joint Motion to Dismiss (Doc. No. 59) is GRANTED.

### B. Sanctions

The Court must still, however, consider the issue of sanctions. As discussed above, Plaintiff's former counsel and Defendants have each asked the Court to impose sanctions against the other. Plaintiff's former counsel ask this Court to sanction Defendants for "surreptitiously" contacting Ms. Fabec's husband and "driving a wedge" between Ms. Fabec and her counsel. (Doc. No. 60.) Defendants cross-move for sanctions on the grounds that Plaintiff's former counsel caused Defendants to incur unnecessary attorney fees and costs when they failed to communicate settlement offers to their client. (Doc. No. 61.) For the following reasons, the Court finds a hearing on the issue of sanctions is unnecessary and denies both Motions.

A district court possesses the inherent authority to sanction a party when it litigates "in bad faith, vexatiously, wantonly, or for oppressive reasons." *First Bank of Marietta vs. Hartford*

14

*Underwriters Ins. Co.*, 307 F.3d 501, 516 (6th Cir. 2002) (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997)). The Sixth Circuit has held that "courts have broad discretion under their inherent powers to fashion punitive sanctions." *Williamson v. Recovery Limited Partnership*, 826 F.3d 297, 304 (6th Cir. 2016). It has cautioned, however, that a court's "inherent powers must be exercised with restraint and discretion," utilized only when "the conduct of a party or an attorney is egregious." *First Bank of Marietta*, 307 F.3d at 516. *See also U.S. ex rel. Tingley v. PNC Fin. Svcs. Group, Inc.*, 705 Fed. Appx. 342, 344 (6th Cir. July 21, 2017).

Plaintiff's former counsel's Motion for Sanctions (Doc. No. 60) is denied. As has been discussed at length above, it is undisputed that Plaintiff Christina Fabec discharged her attorneys on or about September 13, 2019, and that no class has been certified. Plaintiff's former counsel has cited no authority that would allow them to pursue sanctions on their own behalf under these circumstances, and the Court declines to do so.

With regard to Defendant CMH's cross Motion for Sanctions, the Court declines to impose sanctions for the following reasons. Defendant argues sanctions are warranted because (1) Plaintiff's former counsel failed to communicate CMH's alleged settlement offer of $6000 in August 2018; and (2) Plaintiff's husband, Mr. Fabec, indicated in a text message that Plaintiff "probably" would have accepted that offer had it been communicated to her by her counsel. (Doc. No. 61 at p. 15-17.) Plaintiff's former counsel vehemently disputes CMH's allegation that they failed to communicate settlement offers to Ms. Fabec, asserting they do not recall and have no record that CMH formally offered the sum of $6000 at any point during this litigation. (Doc. No. 63.)

The Court finds that Defendant CMH has failed to demonstrate that sanctions are warranted. Mr. Fabec's alleged statement that his wife "probably" would have accepted the sum of $6000 in

August 2018 is insufficient to support an award of sanctions in this matter. Mr. Fabec is not a named plaintiff and, although he is the Plaintiff's husband, there is no evidence that he is authorized to speak on the Plaintiff's behalf with regard to what settlement offers she may or may not have accepted. Moreover, Mr. Fabec's text message states only that Mrs. Fabec "probably" would have accepted CMH's alleged August 2018 settlement offer. The use of the word "probably" suggests uncertainty and is simply too speculative to support an award of sanctions, particularly the award sought herein (i.e. $150,000 in attorney fees and costs).

Accordingly, Defendant CMH's Motion for Sanctions (Doc. No. 61) is denied.[10]

**C. Discovery Motions and Papers**

In light of the above rulings, the various discovery motions and papers currently pending before this Court (Doc. Nos. 48, 51, 73, 74, 75, 76) are denied as moot.

**III. Conclusion**

Accordingly, and for all the reasons set forth above, Defendants' Joint Motion to Dismiss (Doc. No. 59) is GRANTED. The Motion for Sanctions filed by former counsel for Plaintiff Christina Fabec (Doc. No. 60) and the Cross Motion to Strike and for Sanctions by Defendant CMH (Doc. No.

---

[10] Defendant CMH also argues that sanctions are warranted because "Plaintiff's former attorneys continued this lawsuit against DMP after learning that DMP had nothing to do with any effort by CMH to collect a debt from Plaintiff." (Doc. No. 61 at p. 18.) This argument is without merit and rejected. Plaintiff vigorously contested DMP's argument that "it had nothing to do with" CMH's debt collection activities. This Court agreed that additional discovery was necessary on the issue of agency and held DMP's motion for summary judgment in abeyance. (Doc. No. 53.)

16

61) are DENIED.  The hearing on the parties' sanctions motions set for January 28, 2020 is cancelled.

All remaining motions (Doc. Nos. 48, 51, 75, 76) are denied as moot.

**IT IS SO ORDERED.**

Date:  December 23, 2019

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE